IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-00421-MSK-PAC

CLAIRE D. FITZGERALD,

     Plaintiff,

v.

ALBERTO R. GONZALES, Attorney General, U.S. Department of Justice (Federal Bureau of Prisons),

     Defendant.

---

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT**

---

THIS MATTER comes before the Court on the Defendant's Motion for Summary Judgment (**#45**). Having considered the motion, the response (**#53**), the reply (**#62**), and the attachments thereto, the Court finds and concludes as follows.

## I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II. Issue Presented

The Plaintiff, Claire D. Fitzgerald, asserts the following claims against the Defendant, Attorney General Alberto Gonzales ("the Government"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*: (1) hostile work environment; (2) disparate treatment on the basis of sex; (3) retaliation; and (4) constructive discharge. The Court must determine whether a trial is required on any of these claims.

### III.  Material Facts[1]

Based upon the evidence submitted, which the Court construes most favorably to Ms. Fitzgerald, the Court finds for purposes of this motion that:

**<u>General Facts</u>**

1.      Ms. Fitzgerald worked for the Federal Bureau of Prisons ("BOP") as a Trust Fund Analyst Instructor until August 1998.

2.      While employed with the BOP, Ms. Fitzgerald engaged in a sexual relationship with a co-worker, Tim McAfee, who was employed as a Specialty Program Manager.  This relationship lasted from March to October of 1996.  However, Ms. Fitzgerald informed Mr. McAfee in May 1996 that she no longer wanted an intimate relationship with him, and after that time, his advances were unwelcome.

3.      Although he was not Ms. Fitzgerald's supervisor, Mr. McAfee had evaluated her work with regard to an internal review that was completed in February 1996 and culminated in a written report dated March 7, 1996.  There is no evidence that he evaluated her work after that date or after they became intimately involved.

4.       During their relationship, Mr. McAfee engaged in several instances of physically threatening conduct toward Ms. Fitzgerald.  Once, he blocked her exit from her office when she was working late.  Another time, he threatened to "rip [her] computer out of the wall."  During her deposition, Ms. Fitzgerald testified that when she was at Mr. McAfee's apartment, he "grabbed me by the throat and held me against the door and told me that I didn't get to do

---

[1] The parties submitted voluminous exhibits in connection with the summary judgment briefing. The Court has considered such exhibits to the extent that they were referenced in the briefs.

anything unless he . . . allowed me to do it and that he was going to ruin my career."

5.      On October 18, 1996, there was an incident in the BOP parking lot involving Ms. Fitzgerald and Mr. McAfee.  During such incident, Mr. McAfee tried to force his way into Ms. Fitzgerald's car.  The police came to investigate.  Ms. Fitzgerald reported the incident to Brent Huber, the BOP Human Resources Manager, but did not inform him of the nature of her relationship with Mr. McAfee.  The BOP initiated investigations by the Office of Internal Affairs based upon this incident.

6.      Within the two weeks following the parking lot incident, Mr. McAfee made several phone calls to Ms. Fitzgerald, her husband, and her brother-in-law, some of them threatening. Ms. Fitzgerald suspects that Mr. McAfee continued to make telephone calls to her home and office into the summer of 1997.

7.      On October 28, 1996, Ms. Fitzgerald obtained a restraining order from the Arapahoe County Court against Mr. McAfee.  Such restraining order was in place until April 1997.

8.      On November 1, 1996, Ms. Fitzgerald met with Mr. Huber and her supervisor to discuss what options she had to address the alleged sexual harassment, including the use of the BOP's Equal Employment Opportunity ("EEO") process.  At such conference, Ms. Fitzgerald advised that she had already contacted an EEO counselor.

9.      In order to ensure Mr. McAfee's compliance with the restraining order, Rodney Chandler of the BOP issued a memorandum to Ms. Fitzgerald specifying several work restrictions.  For example, he directed Ms. Fitzgerald to have no contact with Mr. McAfee, not to deviate from her scheduled work hours, to park her car in a designated area, and to restrict her

3

movements to the third and fourth floors of the building. A few months later, Mr. McAfee was barred from Ms. Fitzgerald's workplace and placed on "home duty" status. At such time, some of the restrictions with respect to Ms. Fitzgerald were lifted. The restrictions were periodically reinstated when Mr. McAfee was present at the building.

10.     In December 1997, Ms. Fitzgerald's husband, who also worked for the BOP, was transferred involuntarily to the BOP's North Central Regional Office in Kansas City, Kansas. The parties have identified no evidence explaining the BOP's reason for this transfer.

11.     Ms. Fitzgerald felt that she was forced to move with her husband to Kansas because: (a) the government housing she occupied was terminated upon his transfer; (b) she had a 6-week old child and two other children; and (c) she felt that if she returned to work, she would be subject to discrimination. Therefore, she moved to Kansas in March 1998. At such time, she was on maternity leave.

12.     Ms. Fitzgerald had submitted a request for maternity leave to begin in January 1998. Ruth Yancey, the Director of the Management and Specialty Training Center, asked Ms. Fitzgerald to provide a breakdown of the type of leave (annual, sick, or without pay) she desired to use. Ms. Fitzgerald initially refused to provide this information until after Ms. Yancey confirmed that the same information had been, and would be, requested from other employees seeking extended or maternity leave. Ms. Fitzgerald then requested 6 months of paid, non-duty leave. She contended that because Mr. McAfee had been placed on one year of paid, non-duty status for his misconduct, she should received 6 months of paid leave. Ms. Yancey denied this request, then again asked Ms. Fitzgerald to specify the breakdown of leave requested. Ms. Fitzgerald complied with Ms. Yancey's request. Ms. Yancey then authorized Ms. Fitzgerald to

4

use 80 days of sick leave, all of her annual leave, and 12 weeks of unpaid leave for a total of 19 weeks of maternity leave.

13.     There is no evidence that other employees who requested maternity or extended leave were treated differently by Ms. Yancey or anyone else.

14.     After moving to Kansas, Ms. Fitzgerald unsuccessfully tried to obtain employment with the BOP in Kansas City.  The BOP explained that it would not offer her a position as long as there were two pending investigations by the Office of Internal Affairs.

15.     Ms. Fitzgerald resigned from her employment with the BOP in August 1998, after Ms. Yancey denied her request for an extended leave without pay.  Ms. Yancey wrote: "In review of your current leave status, you are scheduled to return to work on August 17, 1998."  She then characterized such date as a "return to duty date."  In her letter of resignation, Ms. Fitzgerald characterized her resignation as involuntary and claimed that she was "forced" to resign by the BOP's actions.

16.     After receiving Ms. Fitzgerald's letter, Ms. Yancey wrote another letter.  Such letter advised Ms. Fitzgerald that she had "not been terminated."  It also advised that her failure to return to work on August 17, 1998, resulted in her placement on "Absent Without Official Leave (AWOL) status."  Ms. Yancey then asked Ms. Fitzgerald to inform her of her intentions.

**Facts Regarding Exhaustion of Administrative Remedies**

17.     While employed with the BOP, Ms. Fitzgerald filed a Complaint of Discrimination (Agency Case No. 97-9309) with the BOP in November 1997 alleging discrimination on the basis of sex and sexual harassment.  According to such Complaint: (a) Tim McAfee subjected her to sexual harassment beginning in or about November 1995; (b) BOP officials knew or should have

known of the harassment but took no action to remedy it; and (c) after complaining about the sexual harassment, Ms. Fitzgerald was subjected to reprisals, which were ongoing at the time of the Complaint.

18.     Ms. Fitzgerald filed a Complaint of Discrimination (Agency Case No. 98-9416) with the BOP in November 1997 alleging discrimination on the basis of sex.  According to such Complaint: (a) Ms. Fitzgerald's immediate supervisor, Rod Chandler, discriminated against her on the basis of sex beginning in or about January 1996; (b) Mr. Chandler retaliated against her after she complained about his discriminatory conduct; and (c) the discrimination and retaliation was ongoing at the time of the Complaint.

19.     Ms. Fitzgerald filed a Complaint of Discrimination (Agency Case No. 97-9323) with the BOP in December 1997 alleging discrimination on the basis of sex.  According to such Complaint: (a) BOP employee Dan Carney made inappropriate comments about Ms. Fitzgerald to others; and (b) BOP employee Boyce James engaged in discriminatory conduct against her.

20.     Ms. Fitzgerald filed a Complaint of Discrimination (Agency Case No. 99-0240) with the BOP in June 1999 alleging discrimination on the basis of race, sex (including sexual harassment), and age.  According to such Complaint: (a) Ms. Fitzgerald was wrongfully denied a position as an attorney with the BOP in December 1997, and the BOP hired younger, less qualified attorneys; (b) Mr. Chandler wrongfully reprimanded Ms. Fitzgerald for missing a meeting in November 1997, which he scheduled while she was on medical leave; (c) Ms. Fitzgerald's supervisor lied to his supervisor about Ms. Fitzgerald, which caused Ms. Fitzgerald to be wrongfully reprimanded in November 1997; (d) Ms. Fitzgerald was wrongfully reprimanded in November 1997 because she defended herself when Mr. McAfee assaulted and harassed her;

6

(e) Ms. Fitzgerald's supervisor gave her derogatory ratings for the 1997-1998 performance period of "exceeds" and "fully successful" instead of "outstanding"; (f) Ms. Fitzgerald was wrongfully denied employment with the BOP in Kansas in August 1998; and (g) Ms. Fitzgerald was constructively discharged from her employment with the BOP in August 1998.

21.     In July 2001, Ms. Fitzgerald filed an appeal with the Merit Systems Protection Board ("MSPB") pursuant to 29 C.F.R. § 1614.302(d)(1).  At the time she commenced such appeal, the BOP had not ruled on her Complaint in Agency Case No. 99-0240.

22.     In the MSPB appeal, the Plaintiff raised the same issues set forth in her Complaint in Agency Case No. 99-0240.  As a consequence, the BOP held Agency Case No. 99-0240 in abeyance until the MSPB could resolve any jurisdictional issues.

23.     The MSPB Administrative Judge concluded that the issues on appeal were timely presented.   However, she later dismissed the appeal for lack of jurisdiction, although the basis of such ruling is not apparent from the record.

24.     Ms. Fitzgerald sought further review from the MSPB.  The Acting Chairman of the MSPB and another member of the MSPB denied her petition for review in a Final Order in August 2004.

25.     Ms. Fitzgerald then sought further review from the BOP pursuant to 29 C.F.R. § 1614.302(c)(2)(ii).  There is no indication that the BOP took any further action.

## IV.  Standard of Review

Determination of claims or defenses on their merits without a trial is governed by Rule 56 of the Federal Rules of Civil Procedure, which facilitates the entry of a judgment if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56

authorizes summary adjudication when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law determines the material facts and issues.  It specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(e).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence for a reasonable jury to find in favor of the non-movant on the claim or defense that the non-movant is obligated to prove.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## V.  Analysis

### A.  Exhaustion of Administrative Remedies

The Government argues that Ms. Fitzgerald failed to timely exhaust administrative

remedies with respect to claims asserted in Agency Case No. P-99-0240 because she failed to

contact an EEO Counselor within 45 days of the alleged discrimination as required by 29 C.F.R. §

1614.105(a).  According to the Government, Ms. Fitzgerald may not proceed on her claims to the

extent that they are premised upon: (a) the denial of an attorney position in December 1997; (b) a

November 25, 1997 letter of reprimand; (c) performance ratings from 1997-1998; (d) the denial

of employment with the BOP in Kansas City in August 1998; and (e) the alleged constructive

discharge on August 16, 1998.

Ms. Fitzgerald responds that she gave the BOP timely notice of these five issues.  She

asserts that she originally raised these issues in an EEO complaint but transferred such complaint

to the MSPB because it was a mixed case.  Following such transfer, she contends that the MSPB

found the claims were timely asserted.  She also contends that the 45-day deadline should be

equitably tolled or that the BOP waived such deadline.[2]

A federal employee who asserts discrimination and retaliation claims against her employer

must exhaust administrative remedies before filing an action in this Court.  *See Coffman v.*

*Glickman*, 328 F.3d 619, 624 (10th Cir. 2003).  The exhaustion of administrative remedies is a

---

[2] Neither party clearly explained the mechanism Ms. Fitzgerald used to exhaust her claims.  The Court has attempted to piece together the relevant history from the parties' exhibits.  However, there are several unanswered questions.  For instance, it appears that Ms. Fitzgerald pursued an appeal before the Equal Employment Opportunity Commission ("EEOC") as to some of the claims presented in her EEO Complaints filed with the BOP.  No party has explained the significance, if any, of such appeal.  In addition, the Government has ignored any effect of the MSPB process on exhaustion.

jurisdictional prerequisite to the assertion of Title VII claims.  *See Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996).  It is Ms. Fitzgerald's burden to establish her exhaustion of administrative remedies.  *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002) (ADA case).

To exhaust administrative remedies, a federal employee can pursue administrative relief either from her employing agency or from the Merit Systems Protection Board ("MSPB").  *See* 5 U.S.C. § 7702(a); *Coffman*, 328 F.3d at 622.  This is accomplished by filing a "mixed case complaint"[3] with the agency or a "mixed case appeal"[4] with the MSPB, but not both.  *See* 29 C.F.R. § 1614.302(b); *Coffman*, 328 F.3d at 622.  "[W]hichever is filed first shall be considered an election to proceed in that forum."  *See* 29 C.F.R. § 1614.302(b).

When the employee elects to proceed before the agency rather than the MSPB, there are several steps she must follow.  First, she must contact an EEO Counselor within 45 days of the alleged discriminatory action.  *See* 29 C.F.R.§ 1614.105(a)(1).  This time limit may be extended an additional 45 days in particular circumstances.  *See* 29 C.F.R. § 1614.105(a)(2).  After completion of counseling, the employee may file a complaint with her employer within 15 days after receiving notice from the agency.  *See* 29 C.F.R. §§ 1614.106(a) & (b). If she receives an unfavorable decision on her complaint, she may then file an appeal with the EEOC and thereafter file an action in this Court within 90 days after receiving the EEOC's final decision.  *See* 42

---

[3] A "mixed case complaint" is "a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the" MSPB.  *See* 29 C.F.R. § 1614.302(a)(1).

[4] A "mixed case appeal" is "an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age."

U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.401 and 1614.407; *Coffman*, 328 F.3d at 624.  If an employee proceeds before the agency and the agency fails to issue a final decision within 120 days after the mixed case complaint is filed, the employee can appeal the matter to the MSPB.  *See* 29 C.F.R. § 1614.302(d)(1)(i).

Here, Ms. Fitzgerald initially sought review through the EEO process from the BOP. After the BOP failed to issue a decision on her mixed case complaint, Ms. Fitzgerald filed a mixed case appeal with the MSPB.  The MSPB concluded that Ms. Fitzgerald's claims were timely submitted.  However, the MSPB later dismissed the appeal for lack of jurisdiction, for reasons not apparent from the record.

The MSPB appellate process does not require contact with an EEO Counselor. Therefore, when Ms. Fitzgerald elected to proceed before the MSPB, any failure to comply with the time limits for contacting an EEO Counselor lost its significance.  Accordingly, the Court cannot conclude that Ms. Fitzgerald failed to exhaust administrative remedies as to the issues raised in her MSPB appeal.

**B.  Claims for Relief**

### Hostile Work Environment

The Government does not challenge Ms. Fitzgerald's ability to produce evidence in support of a *prima facie* hostile work environment claim.  Instead, it contends that it is entitled to summary judgment on his affirmative defense pursuant to *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  To support such defense, the Government must establish that: (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) Ms. Fitzgerald failed to take advantage of any preventive or corrective opportunities provided by the

Government or to otherwise avoid harm.  *See Faragher*, 524 U.S. at 807.

This defense is available only if Mr. McAfee's harassment did not culminate in a tangible employment action against Ms. Fitzgerald, such as discharge, demotion, undesirable reassignment, or a decision causing a significant change in benefits.  *See id.*; *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  "Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates."  *See Ellerth*, 524 U.S. at 762; *see also Pennsylvania State Police v. Suders*, 542 U.S. 129, 144-45 (2004). Therefore, if Mr. McAfee used his supervisory position to make a decision culminating in a tangible employment action against Ms. Fitzgerald, then the defense does not apply.

The Government contends that there is no evidence that Mr. McAfee's harassment resulted in a tangible employment action.[5]  In her response, Ms. Fitzgerald fails to identify any tangible employment action which resulted from Mr. McAfee's harassing conduct.  She first states that Mr. McAfee's evaluation of her work "influenced her performance rating."  However, there is no evidence concerning whether he gave her positive or negative evaluations, whether such evaluations had any impact on her performance rating, or whether any performance rating had a significant impact on her employment status or benefits.  Instead, the evidence shows that Mr. McAfee evaluated Ms. Fitzgerald's work on one occasion before they were intimately involved. Ms. Fitzgerald also states that Mr. McAfee "repeatedly informed her that, if she reported his

---

[5] It is not clear from the caselaw which party bears the burden of production with regard to this issue.  There is some suggestion in the Supreme Court's recent decision in *Suders*, 542 U.S. at 152, that the *Faragher* defense is available if a plaintiff does not allege a tangible employment action.  If it is a plaintiff's obligation to allege a tangible employment action, then it seems appropriate that it be the plaintiff's burden to identify and produce evidence in support of the same when the defense is asserted in the context of a summary judgment motion.  To place the burden of production on a defendant would require a defendant to produce evidence to support a negative, which is illogical.

harassment, she would be fired" and her husband's career "would be adversely impacted." However, there is no evidence that Mr. McAfee directed the BOP to fire Ms. Fitzgerald or made any decisions impacting her husband's employment which would have impacted Ms. Fitzgerald's employment.  Therefore, the *Faragher* defense is available to the Government.

The material facts are not in dispute.  The BOP has an established EEO process for filing complaints of discrimination.  However, Ms. Fitzgerald did not report Mr. McAfee's harassing conduct until October 1996, after which the Government promptly took action to keep Ms. Fitzgerald from coming into contact with Mr. McAfee.  Therefore, the Government has established both elements of the *Faragher* defense.

### Disparate Treatment on the Basis of Sex

The Government challenges Ms. Fitzgerald's ability to produce evidence in support of a *prima facie* disparate treatment claim.  Absent direct evidence of discrimination, Ms. Fitzgerald must produce evidence that: (1) she is female; (2) she suffered an adverse employment action; and (3) similarly situated male employees were treated differently.  *See Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir. 1996); *see also Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998).  If Ms. Fitgerald meets her burden of production, then the burden shifts to the Government to provide a legitimate, non-discriminatory reason for the adverse employment action.  *See Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1124-25 (10th Cir. 2005) (applying *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  If the Government meets such burden, then the burden shifts back to Ms. Fitzgerald to produce evidence that the Government's proffered reason is pretextual. *See id.*

The Government contends that Ms. Fitzgerald cannot produce evidence to support

13

elements 2 or 3.   In her response, Ms. Fitzgerald identifies three instances of discrimination upon which this claim is based: (1) her supervisor denied her an extension of time to complete training classes although he granted such an extension to male employees; (2) Ms. Yancey denied her request for 6 months maternity leave although she allowed others to take such leave; and (3) Ms. Yancey denied her request to use 180 hours of sick leave for use during her pregnancy although she allowed others to take such leave.   However, she has identified no evidence to support any of these instances of alleged discrimination.   In addition, Ms. Fitzgerald produced no evidence of any similarly situated males who received more favorable treatment than she did.

**Retaliation**

The Government contends that Ms. Fitzgerald cannot produce evidence to support a *prima facie* retaliation claim.   To establish a *prima facie* claim of retaliation, Ms. Fitzgerald must either produce direct evidence of retaliation or circumstantial evidence that: (1) she engaged in a protected activity; (2) she was subjected to an adverse action; and  (3) there is a causal connection between the protected activity and the adverse action.   *See Aquilino v. University of Kansas,* 268 F.3d 930, 933 (10th Cir. 2001) (cite omitted).   If Ms. Fitzgerald makes such showing, then the *McDonnell-Douglas* burden-shifting analysis applies.   *See Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003).

The parties do not dispute that Ms. Fitzgerald engaged in several protected activities.   For instance, she lodged complaints through the BOP's EEO process during late 1997.   Instead, the Government asserts that Ms. Fitzgerald cannot produce evidence of either an adverse employment action or a causal connection.

The term "adverse employment action" is liberally construed, but it does not include every

14

action taken by an employer that affects current or future employment, and it excludes actions having only *de minimis* impact. *See Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004). Such term includes acts constituting a material and adverse change in employment status, such as hiring, firing, failure to promote, or reassignment with significantly different responsibilities. *See id.* at 1032-33; *Wells*, 325 F.3d at 1213.. It also includes decisions causing a significant change in benefits. *See Hillig*, 381 F.3d at 1032-33.

According to Ms. Fitzgerald, there are several employment actions which form the basis of this claim: (1) her reputation was damaged; (2) her freedom to move about the workplace was restricted; (3) she was misled about employment opportunities; (4) she was coerced to travel on BOP business without compensation; (5) she was placed on AWOL status; (6) somebody threatened to fire her; (7) she was denied an opportunity to make a "free choice regarding her employment relationship;" (8) her husband was transferred to Kansas; (9) she was made the subject of Office of Internal Affairs investigations; (10) she was denied a reasonable work schedule; (11) she received a lower performance evaluation than she usually received; (12) work assignments were taken from her, reducing her opportunity to transfer to another position; and (13) she was constructively discharged from her position. Of these, she has presented evidence to support only instances 2, 5, 8, 9 and 13.[6]

No reasonable jury could conclude that the restrictions on Ms. Fitzgerald's freedom to move about the workplace were an adverse employment action. It is undisputed that the BOP implemented such restrictions to ensure that she did not come into contact with Mr. McAfee and to ensure compliance with the restraining order against Mr. McAfee. These restrictions did not

---

[6] The constructive discharge claim is addressed *infra*.

impact her employment status or benefits.

No reasonable jury could conclude that the Office of Internal Affairs investigations constituted adverse employment actions.  It is undisputed that such investigations began after Ms. Fitzgerald complained of sexual harassment by Mr. McAfee.  There is no evidence that these investigations altered the terms or conditions of Ms. Fitzgerald's employment or affected her benefits.

However, a reasonable jury could conclude that Ms. Fitzgerald's placement on AWOL status and her constructive discharge in August 1998 were adverse employment actions because they constituted changes in her employment status.  A reasonable jury could also conclude that the BOP's reassignment of Ms. Fitzgerald's husband to Kansas was an adverse employment action against Ms. Fitzgerald.  At the time her husband was reassigned, she was approximately eight months pregnant.  She and her family were living in government housing, which would be taken away after her husband's relocation.  In order for her to continue with her job in Colorado, Ms. Fitzgerald would have been required to live apart from her husband, maintain a second residence and care for a newborn on her own.   Based upon all of these circumstances, Ms. Fitzgerald felt that she had no choice but to move to Kansas and leave her job in Colorado behind. Therefore, the BOP's decision to relocate her  husband also impacted her employment status.

To establish causation, Ms. Fitzgerald relies solely upon the temporal proximity between these employment actions and her protected activities.  For temporal proximity, alone, to establish a causal connection, the temporal distance must be "very close"; otherwise, a plaintiff must adduce additional evidence beyond temporal proximity to make a showing of a causal connection. *See Miller v. Automobile Club of New Mexico, Inc.*, 420 F.3d 1098, 1121 (10th Cir. 2005).  For

example, a 6-week gap between a protected activity and an adverse employment action may be sufficient to establish a causal connection, but a 3-month gap is not. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004).

The reassignment of Ms. Fitzgerald's husband to Kansas occurred one month after Ms. Fitzgerald filed her first two complaints of discrimination and during the same month that she filed her third such complaint. Therefore, temporal proximity is sufficient to support a causal connection. In conjunction with the pending motion, the Government offers no legitimate, non-discriminatory reason for Mr. Fitzgerald's relocation to Kansas. Therefore, it is not necessary to explore whether there was pretext under the *McDonnell-Douglas* burden-shifting analysis. As a consequence, a trial is required on her retaliation claim.

**Constructive Discharge**

The Government argues that Ms. Fitzgerald cannot establish either element of a *prima facie* constructive discharge claim. The elements of such claim are: (1) a reasonable person would have viewed the employee's working conditions as intolerable; and (2) the working conditions were so difficult that a reasonable person in the employee's position would have felt compelled to resign. *See Heno v. Sprint/United Management Co.*, 208 F.3d 847, 858 (10th Cir. 2000); *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992). A claim for constructive discharge does not lie if the employee resigns of her own free will, even if a result of her employer's actions. *See Heno*, 208 F.3d at 858. In addition, an employee's subjective beliefs are not relevant to such claim, as an objective standard governs this analysis. *See id.*

Ms. Fitzgerald contends that she was constructively discharged from her BOP job because her supervisor: (1) subjected her to increased criticism; (2) treated her differently with respect to

17

work assignments, work schedule and leave; (3) gave her lower performance ratings for her work; (4) accused her of misconduct; (5) coerced personal and medical information from her; (6) made disparaging remarks about her; and (7) denied her the opportunity to make a free choice regarding her employment relationship.  However, in support of such contention, Ms. Fitzgerald points to no evidence in the documentary record.

Ms. Fitzgerald also contends that she was constructively discharged from her BOP job because her husband was involuntarily relocated to Kansas.  In support of this contention, she has produced evidence that in order for her to continue working for the BOP, she would have been required to maintain a separate residence and live apart from her family.  A reasonable jury could conclude that these are intolerable working conditions and that a reasonable person in Ms. Fitzgerald's position would have felt compelled to resign.

**IT IS THEREFORE ORDERED** that:

(1)    The Government's Motion for Summary Judgment **(#45)** is **GRANTED IN PART** and **DENIED IN PART**.

(2)    The Government is entitled to judgment on Ms. Fitzgerald's hostile work environment and disparate treatment claims.

(3)     Ms. Fitzgerald's remaining claims are: (a) retaliation; and (b) constructive

discharge.

Dated this 7th day of March, 2006

**BY THE COURT:**

Marcia S. Krieger
United States District Judge